UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CASE NO. 3:19-cv-2955-X

-----------------------------------------x

AASHISH CHUTTANI, et al.,

                    Plaintiffs,

v.

UNITED STATES CITIZENSHIP and
IMMIGRATION SERVICES,  et al.,

                    Defendants.

-----------------------------------------x

TRANSCRIPT OF THE HEARING

BEFORE THE HONORABLE BRANTLEY STARR

UNITED STATES DIVISION JUDGE

Dallas, Texas

November 17, 2020

9:59 a.m.

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Page 2

```
 1    A P P E A R A N C E S:

 2

      FOR THE PLAINTIFFS:
 3
          THE PATEL LAW GROUP
 4            1900 Pearl Street
              Suite 1800
 5            Dallas, Texas 75201
          BY:  JONATHAN ALEXANDER GITLIN, ESQ.
 6            jgitlin@patellegal.com
              (972) 650-6848
 7

 8    FOR THE DEFENDANT UNITED STATES CITIZENSHIP AND
      IMMIGRATION SERVICES, et al.
 9
          UNITED STATES ATTORNEYS OFFICE
10            1100 Commerce Street
              Suite 300
11            Dallas, Texas  75242
          BY:  SARAH ELIZABETH DELANEY, ESQ.
12            sarah.delaney@usdoj.gov
              214-659-8730
13

14

15

16

17

18

19

20

21

22

23

24

25
```

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Electronically signed by Kelli Ann Willis (101-201-060-0438)                     f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

```
 1

 2    COURT REPORTER:  MS. KELLI ANN WILLIS, RPR, CRR, CSR
                       United States Court Reporter
 3                     1100 Commerce Street
                       Room 1528
 4                     Dallas, Texas  75242
                       livenotecrr@gmail.com
 5

 6            Proceedings reported by mechanical

 7    stenography and transcript produced by computer.

 8

 9                            *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Electronically signed by Kelli Ann Willis (101-201-060-0438)

f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 4

1            THE COURT:  This is Judge Starr.  We are

2   on the record in Case No. 3:19-cv-2955.  That is

3   Chuttani versus United States Citizenship and

4   Immigration Services.  We have got a hearing on the

5   Government's Motion to Dismiss.

6            So let's go ahead and have appearances,

7   first for the plaintiff.

8            MR. GITLIN:  Good morning, your Honor.

9   This is Jonathan Gitlin on behalf of the Plaintiffs.

10           THE COURT:  Thank you, Mr. Gitlin.

11           And how about for USCIS?

12           MS. DELANEY:  Good morning, your Honor.

13  This is Assistant United States Attorney Sarah

14  Delaney on behalf of both USCIS and Ken Cuccinelli.

15           THE COURT:  Thank you, Ms. Delaney.

16           So we are obviously having this hearing by

17  phone.  I will give you sort of one request in

18  advance before I turn it over to the Government to

19  argue the Motion to Dismiss.  My request is if you

20  are mentioning a case name, if you could give us a

21  citation, to go along with your case name.  That is

22  the hardest part of transcribing any hearing, and

23  doing it by phone makes it all the harder.

24           If you can give us a citation with a case

25  name, that will help us track down what case you are

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 5

1   talking about and keep a clean record.

2          Ms. Delaney, I will let you go first since

3   it is your motion, and just like in written form, in

4   civil cases, I will let you have the final word as

5   well after we hear from Mr. Gitlin.

6          So the floor is yours, Ms. Delaney.

7          MS. DELANEY:  Thank you, your Honor.

8          The Defendants have moved to dismiss this

9   action in its entirety as to the Plaintiff's first

10  claim under the Administrative Procedure Act.  The

11  Plaintiffs have not demonstrated that the Defendants

12  have unlawfully withheld or unreasonably delayed the

13  processing of the Plaintiff's form I-526 petition.

14         And as to the Plaintiffs' second claim for

15  mandamus relief, those are claims that will only be

16  invoked if there are no other adequate remedies

17  available.  The Plaintiffs do have other remedies to

18  compel agency action, like a claim under the APA,

19  even when granting such an extraordinary remedy is

20  not appropriate.

21         I think it is helpful to provide a little

22  background on the EB-5 program, particularly as to

23  the changes to the processing system that went into

24  place at the end of the March, just about the time

25  to Motion to Dismiss was filed.

Electronically signed by Kelli Ann Willis (101-201-060-0438)          f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 6

 1            So the EB-5 program provides visas to

 2    aliens who have invested or are in the process of

 3    investing in a new commercial enterprise in the

 4    United States.

 5            It requires a certain level of investment,

 6    and the investment must create full-time employment

 7    for at least 10 US citizens and lawfully employ

 8    them.

 9            To be classified as an EB-5 investor, the

10    alien must file a form I-526 petition with the

11    USCIS.  As part of that petition, the alien must

12    provide documentation to demonstrate each of the

13    numerous components for EB-5 requirements.

14            That requires documentation and

15    information about the new commercial enterprise,

16    what it is, how it is going to operate, information

17    about the investment itself, documents and

18    information about the legality of the capital

19    invested, documents and information about the job

20    creation, how many jobs, what kind of jobs, et

21    cetera.  Information about the engagement of the

22    petitioners in the new commercial enterprise, are

23    they going to be there on a day-to-day basis?  Are

24    they setting company-wide policies and procedures?

25    And, additionally, information about whether the

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 7

```
 1   enterprise will be in a targeted employment area,

 2   which means there is a lower capital investment

 3   required for approval of the petition.

 4            So once we have the set of evidence, all

 5   of that information and reviewed all that

 6   information, and if the Form I-526 can be approved,

 7   the alien can then apply for an EB-5 visa, if they

 8   are abroad, or for a change of their status, if they

 9   are already in the United States.

10            But either way, it is pulling from the

11   same allotment of visas for each country for the

12   employment-based fifth preference, the EB-5

13   classification.

14            So on March 31st of 2020, the USCIS

15   modified the inventory management process for I-526

16   petitions.  It changed from a first-in/first-out

17   based approach to now prioritize petitions for visas

18   immediately or soon-to-be available.  And this new

19   system does apply to the Plaintiffs' I-526 petition.

20            Specifically, aliens from a handful of

21   countries have historically submitted most of these

22   petitions.  And some of these countries are

23   over-subscribed, meaning that a country's use demand

24   exceeds the supply of visa numbers available for

25   allocation in a given classification from the
```

Electronically signed by Kelli Ann Willis (101-201-060-0438)          f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 8

1    Department of State.

2           Additionally, the oldest pending I-526

3    petitions are also generally from countries that are

4    over-subscribed.  As a result, under this new

5    system, visa availability is taken into

6    consideration.  So generally workflows are now

7    managed in a first-in and first-out order while also

8    factoring in whether a visa is available or

9    soon-to-be available, and whether the underlying

10   project in which the alien is investing has been

11   reviewed by the Agency.

12          The change was made to align more closely

13   with the congressional intent of the EB-5 program,

14   and to increase fairness in the program's

15   administration.

16          Importantly, it also creates a much more

17   dynamic system because the visa availability is

18   assessed monthly, when State updates the visa

19   numbers, which also means the adjudication order is

20   updated frequently as well, taking into account that

21   availability of visas.

22          On the whole, the new inventory management

23   process has proven very successful.  The estimated

24   time range has been decreasing since it was put into

25   place, since the estimated processing time range

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 9

1    uses the data from the most-recently completed cases

2    and it is updated monthly to provide a time range

3    for when USCIS adjudicates 50 percent of the cases,

4    and 93 percent of the cases, so that someone who has

5    a petition pending has a good understanding, based

6    on the latest data, how long the process might take

7    for them.

8              So, currently, the estimated processing

9    time range is 30 to 49.5 months for all non-Mainland

10   China petitions.  So 30 months is the time it takes

11   to complete 60 percent of the cases, and 49.25

12   months is how long it takes to complete 93 percent

13   of the cases.

14             As the Court will note, this is a decrease

15   from the time range that was included in the Motion

16   to Dismiss back in April.  And at that point, the

17   submitted time range was 31 to 50.5 months.  So the

18   fact that there has been a decrease in the time

19   range across the board demonstrates that USCIS is

20   systemically moving through the adjudication process

21   for all of these petitions.

22             Additionally, the average number of

23   petitions that has been completed each month under

24   this new system has increased.  The average number

25   completed between March and August of 2020 is up

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 10

1    43 percent from the number completed between March

2    and August of 2019.

3              That being said, as of the second quarter

4    of this fiscal year, there are more than 16,500

5    pending petitions with more than 4,000 new petitions

6    received in this fiscal year alone.  It just

7    indicates that there is a large volume of these

8    cases coming in, and while USCIS is working to move

9    through the process and has implemented this new

10   system to try to be more fair, to be more dynamic,

11   there are just still a lot of petitions to be

12   reviewed.

13             I also wanted to point out -- of course.

14             THE COURT:  Can I ask?  One thing I'm

15   wrestling with in this case, I understand your

16   distinction on the mandamus versus the APA claims,

17   in that you believe they never have a mandamus and

18   they only a viable APA claim at the right time,

19   which is unreasonable to weigh.  And I'm trying to

20   wrap my mind around the change in processing from

21   first-in/first-out to the new method, and when an

22   unreasonable delay would occur.

23             I know your argument here is that this is

24   not yet approaching the average time for the

25   adjudication, and so we are not there yet.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 11

1          Can you help me work through what

2     unreasonable delay would look like for an APA claim

3     under the new system?  Are we still talking the

4     averages, you know, as a ballpark in looking at the

5     31 to 50.5 months?  And if we get sort of beyond the

6     50.5, then we are in the territory of a viable APA

7     claim?  Or what is your understanding how the new

8     system interfaces with the APA standard of

9     unreasonable delay?

10          MS. DELANEY:  Yes, your Honor.  That would

11    be our position, that the estimated processing time

12    range is really the appropriate data to look at,

13    when determining an unreasonable delay.

14          Again, the Agency has been working to

15    decrease those numbers.  And right now, it is 30 to

16    49.5 months.  And so, if there is a visa available,

17    and if the time range is beyond that, and if the

18    plaintiff demonstrates there is some other

19    explanation as to why the delay is unreasonable, it

20    is not simple -- although the processing time is a

21    significant component of unreasonable delay, there

22    do need to be some additional factors.  It is,

23    unfortunately, not a black and white rule in that

24    sense.

25          THE COURT:  Correct.

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Page 12

1            Understood.  I understand that from the

2    appellate case law as well, especially with INS

3    versus Miranda.

4            Thank you for that clarification, because

5    it is more than just a measurement of time.

6            MS. DELANEY:  Yes, your Honor.

7            THE COURT:  Okay.  Well, you answered my

8    question.  You can proceed.

9            MS. DELANEY:  Thank you, your Honor.

10           Now I would like to provide some

11    information as well about the status of the

12    individual Plaintiffs in their petitions.  And I

13    would welcome, during Plaintiff's argument, if I

14    have missed any of this information, perhaps there

15    are updates that the Plaintiff might have on these,

16    to please share as well on that.

17           So, based on the information that the

18    Agency currently has, the first plaintiff, Aashish

19    Chuttani filed a petition in September of 2018.  So

20    the petition has been pending for 25.5 months.

21           Currently, Chuttani is in the United

22    States on H-1B status until May of 2021.  And based

23    on the Agency's information as of this time, the

24    Agency estimates that Chuttani's petition will be

25    assigned to an officer for adjudication within the

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 13

1    next 30 days.

2              The second plaintiff, Suman Siddamreddy,

3    the petition was filed in December of 2018.  So it

4    currently has been pending for 23 months.  And

5    Siddamreddy has been in the United States on H-1B

6    status until April of 2023.

7              Bharat Uppalapati, the petition was filed

8    in April of 2019.  So it has been pending for 19

9    months.  And Uppalapati is the United States on S-1

10   status as part of an academic program that runs

11   until June of 2021.

12             At this time all three do have visas

13   available or soon-to-be available, based on their

14   country of birth.

15             THE COURT:  Ms. Delaney, can I ask you,

16   for Chuttani that will be assigned in the next 30

17   days based on the current model --

18             MS. DELANEY:  Yes, your Honor.

19             THE COURT:  -- do you know any ballpark

20   estimations of timeline from assignment to an agent

21   to adjudication of the I-526 petition on average?

22             MS. DELANEY:  I don't have that specific

23   number, your Honor.  I'm happy to look into that.  I

24   do know it is a fairly short turnaround, although I

25   can't, unfortunately, at this time quantify how

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 14

1    short, short may be.

2              THE COURT:  Understood.

3              MS. DELANEY:  Once it is assigned to an

4    officer, it is fairly far along in the process.

5              THE COURT:  And that was my guesstimate.

6    And that is fine.  You don't need to chase down an

7    answer and file something supplemental.  I was just

8    wondering if you knew off the top of your head.

9              MR. GITLIN:  Your Honor, this is Jonathan

10   Gitlin.  Just as a practical matter, in cases like

11   these, and, you know, obviously opposing counsel is

12   free to say anything, just I figured I had a little

13   bit of information that might answer your question.

14             Typically, when a case like this gets

15   filed, and let's say we make it past this point,

16   typically what happens is opposing counsel, the

17   Government's counsel comes to plaintiff's counsel,

18   and says, Hey, you know, plaintiffs are now being

19   processed, can we abate the case for maybe 30, 60

20   days?  And see if we can get this finished up.

21             And the whole case becomes moot, and

22   Plaintiff's and Defendant's counsel typically work

23   out a deal for a short amount of time, that within

24   30 to 60 days the petition -- the EB-5 petition gets

25   processed and the case gets dismissed as moot.

Electronically signed by Kelli Ann Willis (101-201-060-0438)          f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 15

1        And that has sort of has been my

2   experience and what I have talked to other people

3   about.  Take that for what it is worth.

4        THE COURT:  Thank you.  Understood.

5        That is one of the questions in the back

6   of my mind, and I will throw this out there, you

7   know, if I find that there is no mandamus and the

8   APA claim is premature, is there any plaintiff whose

9   posture is far enough along to warrant abating the

10  case versus dismissing without prejudice.

11       So that is a lingering question in my

12  mind, to the extent either of you can think through

13  that and provide an answer today, that would be

14  helpful.

15       So, Ms. Delaney, the floor is back to you.

16       MS. DELANEY:  Thank you, your Honor.

17       I'm looking first at the Plaintiff's APA

18  claim.  The defendants agree that the APA does

19  authorize federal courts to compel agency action

20  that has been unlawfully withheld or unreasonably

21  delayed.

22       But the Plaintiffs have failed to state a

23  claim for relief under the APA.  And currently, as

24  another court in this district has explained, much

25  like mandamus relief, compelling Agency action under

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 16

1    the APA is considered an extraordinary measure.

2             And, your Honor, that is from Alsharqawi

3    versus Gonzales, No. 3:06-cv-1165-N, from the

4    Northern District of Texas, March 14, 2007.

5             The Agency, looking at those two factors

6    under the ACA, unlawfully withheld and unreasonably

7    delayed, the Agency has unlawfully withheld the

8    required action when it has failed to comply with

9    the statutorily-imposed deadline.  But there is no

10   mandatory by which USCIS must adjudicate a I-526

11   petition.

12            The Plaintiffs have argued that the

13   aspirational language in 8 U.S.C. 1671 means that

14   the Agency must adjudicate all petitions within 180

15   days.  But as the Fifth Circuit explains in Bian

16   versus Clinton, 605 F.3d 249, Fifth Circuit, 2010,

17   this statute merely expresses Congress's sense of

18   the adjudicative process rather than indicating

19   USCIS has a plainly-prescribed duty to adjudicate

20   applications within a 180-day time frame.  Further,

21   the Plaintiff has not pointed to any other statute

22   or regulation that sets a specific timeline for

23   I-526 adjudication.

24            THE COURT:  Ms. Delaney, can I --

25            MS. DELANEY:  Of course, your Honor.

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Page 17

1           THE COURT:  Can I ask what the effect is

2    of a Fifth Circuit case like Bian, where they

3    vacated as moot?  Like, what does that mean?  Is

4    that persuasive but not binding?  Is it nothing?  Is

5    it still binding?  What is the effect of the Bian

6    case on a court like mine?

7           MS. DELANEY:  Your Honor, our position

8    would be that it would still be binding.  It is a

9    little tricky, obviously, because it was vacated as

10   moot.  But it was vacated as moot because the

11   application at issue in the District Court case and

12   then in the initial appeal was adjudicated by the

13   time it moved through the appeal process.  So the

14   whole situation was moot.

15           I still think it is definitely persuasive,

16   and we would argue, it is binding.  But at a

17   minimum, it is persuasive of an explanation on how

18   the Fifth Circuit does view that language.

19           THE COURT:  Understood.  Thank you.

20           MS. DELANEY:  So, again, because there is

21   no statutorily-imposed deadline by which the Agency

22   must adjudicate a I-526 petition, USCIS cannot have

23   unlawfully withheld adjudication.

24           So looking at the second factor,

25   unreasonable delay, in order to state a valid claim

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 18

1    for unreasonable delay of Agency action, a plaintiff

2    must establish that the defendant had a

3    non-discretionary duty to act, and that the

4    defendant's unreasonably delayed in acting on that

5    duty.

6            But here there is no indication that the

7    delay has been unreasonable.  As we pointed out, the

8    Plaintiff's petitions have been pending for less

9    time than the current estimated processing time

10   range of the 30 to 49.5 months, and the Courts have

11   repeatedly held that processing times by themselves,

12   even if lengthy, cannot support a finding of

13   unreasonable delay.

14           Courts have considered a variety of

15   factors, like the source of the delay, the

16   complexity of the investigation, the nature and

17   interest prejudiced by the delay, and whether

18   expediting actions would have an adverse effect on

19   other priorities of the Agency.

20           But the Plaintiffs have not articulated

21   any circumstances in the First Amended Complaint

22   beyond the simple passage of time that demonstrates

23   any such unreasonable delay.  They do site general

24   specifics about the number of I-526 petitions that

25   have recently been adjudicated.  But they have not

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 19

1    demonstrated how those statistics impact their own

2    petitions, or how that statistics constitute

3    unreasonable delay overall.

4            And while they also claim that they have

5    provided a unique list of how each plaintiff would

6    be prejudiced by allowing the normal adjudication

7    process to continue, it really seems to boil down to

8    the possibility that they may eventually need to

9    leave the United States, which is always an inherent

10   risk in the immigration process.  And at this point

11   would not become an issue until mid-2021, at the

12   earliest, and for one of the Plaintiffs, not until

13   2023.

14           As I have noted, USCIS has more than

15   16,500 petitions pending.  And each petition

16   requires a complex investigation into the various

17   EB-5 requirements.  Essentially, Plaintiffs have

18   remained in the waiting line because there is a long

19   line of applicants ahead of them.

20           Allowing Plaintiffs to jump to the front

21   of the line would simply push other petitions back,

22   including many who have been waiting longer.  And

23   while Plaintiffs allege that this new visa

24   availability inventory management system already

25   jumps certain petitioners to the front of the line,

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 20

1    it is inaccurate.  There are thousands of aliens

2    with pending I-526 petitions that also have visas

3    available or soon-to-be available.

4            And there is a significant difference

5    between a program-wide inventory management approach

6    that prioritizes certain petitions based on specific

7    factors, and moving three individuals to the front

8    of the line, ahead of anyone else, with these same

9    characteristics.

10           As a result, the Plaintiffs have failed to

11   demonstrate that USCIS has unreasonably delayed

12   adjudication, and Plaintiffs have failed to state a

13   claim for relief under the case law.

14           Moving to the Plaintiffs' second claim for

15   mandamus relief, your Honor, as the Court has noted,

16   the Defendants believe that Plaintiffs have failed

17   to demonstrate all three necessary elements for this

18   extraordinary relief.

19           First, because they don't have a clear

20   right to a mere instant adjudication as they are

21   requesting in the First Amended Complaint because

22   Defendants have not failed to perform a clear duty.

23           The Defendants have not failed to

24   adjudicate the petitions within a reasonable time.

25   There is no statutory deadline.  The petitions are

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 21

1    in the current estimated processing time range, and

2    the principle of the Plaintiffs' principal argument

3    is that they believe the delay has been lengthy, but

4    they really raise only minimal allegations at best

5    as to any other basis for unreasonable delay.

6          The Plaintiffs have not alleged any facts

7    that would justify their receipt of more favorable

8    treatment than other similarly-situated petitioners

9    by allowing them to jump to the front of the line,

10   which would create an unfair EB-5 system and result

11   in requirements that are unevenly applied to

12   petitioners across the board, and potentially result

13   in a barrage of other litigation, if others also

14   tried to cut ahead in line.

15         But more importantly, this claims fails

16   because Plaintiffs do have other adequate remedies

17   available for relief.  Plaintiffs have other

18   options, like bringing suit under the APA, which

19   they obviously have done; their failure to

20   sufficiently plead their APA claims doesn't mean a

21   remedy doesn't exist, it is just that it is

22   unavailable to them they way they have pleaded it at

23   this time.

24         And so the courts in the Fifth Circuit

25   have repeated held the same, that mandamus relief is

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 22

1    unavailable in these situations, because the APA

2    authorizes courts to compel Agency action that has

3    been unreasonably delayed.  And so mandamus relief

4    is duplicative of the APA relief options.  And,

5    therefore, Defendants argue that Plaintiffs have not

6    demonstrated any of the necessary elements for

7    mandamus relief, meaning this claim must be

8    dismissed as well.

9            Your Honor, those are my arguments.  I'm

10   happy to take any questions you might have.

11           THE COURT:  Sure.

12           The only question that I have that I

13   haven't already asked, I think, it just goes to

14   dismissal with prejudice or without.

15           If I agreed with you, you know, that

16   mandamus is duplicative, that is a dismissal with

17   prejudice.  If I agree with you on our APA

18   arguments, it is a dismissal without prejudice, if

19   it is not.

20           I mean, the thing that I struggle with is,

21   if it is a dismissal with prejudice, normally that

22   would bind a future adjudication, right?  Res

23   judicata or collateral estoppel.

24           But here it seems like, if there passes a

25   period of time and circumstances indicate an

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 23

1    unreasonable delay, then they should be able to file

2    a suit, and it is viable at that point in time.  I

3    wouldn't want any ruling in a case that is perhaps

4    premature to be impacting that subsequent case.

5              So I'm assuming it is a dismissal without

6    prejudice that we are talking about, but what are

7    your thoughts on that?

8              MS. DELANEY:  Your Honor, at this point we

9    would argue dismissal with prejudice, particularly

10   with the mandamus claim is appropriate.

11             We also believe, it would also be

12   appropriate as to the APA claims.  But I do

13   understand your Honor's concern.  And perhaps that

14   is where more a question of abatement versus

15   dismissal comes into play.

16             At this point there is no indication that

17   there has been an unreasonable -- excuse me -- an

18   unreasonable delay.  The process continues to move

19   forward.

20             Again, Mr. Chuttani's petition will be

21   before an officer for adjudication likely within the

22   next 30 days.  So there is every indication that

23   this process does continue to move forward for the

24   Plaintiffs.

25             As a result, we would think it is

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 24

1    appropriate to dismiss with prejudice.  But,

2    obviously, we would defer to whatever your Honor

3    thinks is appropriate.

4            THE COURT:  Understood.

5            And one reason I'm wrestling with this is

6    you brought up your arguments as both under

7    jurisdictional grounds and merits grounds.  And so

8    ordinarily if I were to dismiss something for lack

9    of jurisdiction, say, in this case, if it is not yet

10   ripened, then I couldn't say that I had reached the

11   merits of the issue.  I would have to say that I

12   hadn't reached the merits of the issue, so the

13   dismissal would be without prejudice.

14           So I think if I agree with your

15   jurisdictional argument, it would be without

16   prejudice.  If I use that argument instead as being

17   a 12b6 failure to state a claim argument, I think it

18   would be a dismissal with prejudice.

19           So that is just what I'm wrestling with in

20   my mind.  I know these are intricate things that

21   that judges figure out the last word in a ruling, so

22   you don't need to get bogged down with that.

23           But, Mr. Gitlin, I would like to hear your

24   thoughts as well on with prejudice or without, if it

25   is jurisdiction, if it is the merits.

Electronically signed by Kelli Ann Willis (101-201-060-0438)          f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

1          So, I guess, the floor is yours, Mr.

2    Gitlin, to respond how you wish, knowing what the

3    questions are that are troubling me at the moment.

4          MR. GITLIN:  Sure.

5          Your Honor, why don't I go ahead and

6    answer your immediate question, and then I can get

7    into my argument.

8          As we laid out, your Honor, in our

9    objection, any dismissal on jurisdictional grounds,

10   I believe it is the Fifth Circuit, and I have cited

11   it in my objection, must be without prejudice.

12         Because, just as you said, if it is a

13   dismissal for lack of jurisdiction, then this court,

14   by definition, doesn't have jurisdiction to

15   adjudicate the merits, and a dismissal with

16   prejudice would act as an adjudication with the

17   merits.

18         So if you would give me just a second,

19   that is, I believe, in my objection, which is

20   Document No. 16, Paragraph No. 9, and it is going to

21   be Footnote No. 2, it looks like.

22         And it says, "Where both 12b1 and 12b6

23   grounds for dismissal have merit, the Court should

24   dismiss only on the jurisdictional grounds.  This

25   permits the Court, without jurisdiction, from

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 26

1   prematurely dismissing a case with prejudice, and

2   thereby allows the plaintiff to pursue their claim

3   in a court that does have proper jurisdiction."

4          And that cites to a Northern District

5   case, Tovar v. US Healthworks.  It is from

6   February 3rd of this year, so I will give you the

7   case number; it doesn't have a citation yet.  It is

8   going to be 3:19-cv-803-M-BK.

9          And that case is citing to a Fifth Circuit

10  case called Hitt, H-I-T-T, v. City of Pasadena.  And

11  the citation for that is 561 F.2d 606.

12         THE COURT:  Excellent.  I have got those

13  down, and while phone hearings are generally

14  horrible and problematic, they do make it much

15  easier to find our cases.  So I do have it pulled

16  up.  So, thank you, Mr. Gitlin.

17         MR. GITLIN:  Okay.  Your Honor, my -- my

18  response is going to be walking through my Amended

19  Complaint.  So if the Court wanted to pull that up

20  to follow along, that is going to be Document No. 11

21  in this case.

22         And then there are just a couple of things

23  I wanted to preface with.

24         Defendant's counsel cited a bunch of stats

25  and numbers, and et cetera, et cetera.  And made

Electronically signed by Kelli Ann Willis (101-201-060-0438)          f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 27

1    allegations about the facts, and as I have laid out

2    in my objection, this Court is prohibited from

3    any -- from considering any of that.

4            Per the Fifth Circuit, the Court must

5    consider only what is in my Complaint, and the

6    documents referenced in my Complaint.  And none of

7    those things that Plaintiffs -- oh, sorry --

8    Defendants counsel is citing are in my Complaint.

9    And, in fact, they contradict with some of the

10   numbers in my Complaint.

11           And in order to resolve that, that would

12   obviously be a factual question that would go to

13   trial.  So for the purpose of the Motion to Dismiss,

14   the Court must limit itself to what is in the

15   Complaint.

16           Now, if at trial they want to come forward

17   and argue, well, those aren't the real numbers that

18   we published on our website, these are the correct

19   ones, then that is obviously a fact question that is

20   resolved at trial.

21           But for here, for the low bar to see if I

22   even pled a claim of relief, then the Court must

23   take only my facts.

24           And so why don't we start with the

25   jurisdictional argument, 12b1, and if the Court

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 28

1    would start at paragraph 6 on our -- it is going to

2    be page 2, paragraph 6 in our Amended Complaint.  As

3    the Court sees in 6, 7, and 8, we have pled that

4    each of the Plaintiffs is a natural person and a

5    citizen of India.

6            And as opposing counsel detailed, this

7    case deals with immigration petitions filed by each

8    of the Plaintiffs seeking a visa based on the EB-5

9    category of federal immigration law.

10           The Court can move to the next page,

11   paragraph 16, "in order to obtain a EB-5 visa, an

12   alien must file a form I-526 petition with USCIS."

13   And then the next paragraph, 17, "Pursuant to 5

14   U.S.C. Section 555, USCIS must adjudicate an EB-5

15   petition within a reasonable amount of time."

16           Now, over and over during Defendant's

17   argument you heard opposing counsel say, well, there

18   is no statutory deadlines, so we can't have ever

19   blown a deadline.  But that is just wrong.

20           There is a deadline, and it is statutory.

21   And it is non-discretionary.  It is, "The USCIS must

22   adjudicate any petition before it within a

23   reasonable amount of time."

24           So that is the deadline.

25           Moving on, if we jump to page 6, and start

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Page 29

1    with Paragraph 33, and, your Honor, I can just

2    summarize this.

3              I believe defense counsel gave the numbers

4    correctly, the dates correctly.  All three of my

5    clients, all three Plaintiffs submitted an EB-5

6    petition in September of -- and I'm on paragraph 35

7    on page 6 -- on September of 2018.  USCIS

8    acknowledged receipt of that petition.

9              Paragraph 37, as of the filing of this

10   Complaint, USCIS has neither adjudicated the

11   Plaintiffs' petition nor issued a Request for

12   Evidence, what we refer to an RFE, with respect to

13   that petition.

14             And the allegations are similar.  I won't

15   take the Court through each one, for the two other

16   Plaintiffs, Suman Siddamreddy and Bharat Uppalapati.

17             I would like to jump ahead to page 10, and

18   these are our claims.  As I just covered, USCIS has

19   a statutory non-discretionary duty under 5 U.S.C.

20   Section 555(b) to adjudicate EB-5 petitions within a

21   reasonable amount of time.

22             Our claims are all essentially requesting

23   an order from this Court, and the one finding that

24   is the delay has been unreasonable.  And, number

25   two, ordering USCIS to adjudicate our petitions.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 30

1          And so let's start with our first claim on

2     page 10.  Claim 1, 5 U.S.C. 706.  5 U.S.C. 706 gives

3     a private right, a statutory right to adjudication

4     by a court.  Five U.S.C. 706 says -- well, here, let

5     me back up.  Five U.S.C. 702 says a person suffering

6     a wrong because of Agency action or inaction is

7     entitled to judicial review of that action.

8          Well, that is what we are alleging.  So if

9     you go to 5 U.S.C. 706, it says "the reviewing court

10    shall compel Agency action unlawfully withheld or

11    unreasonably delayed."

12         And our allegation is that the Agency

13    action has been unreasonably delayed.  So we pled a

14    federal civil statutory claim under 5 U.S.C. 706.

15    The same thing with Claim 2 on the following page,

16    Mandamus Act, 28 U.S.C. 1361.

17         We have pled that USC -- I'm on paragraph

18    72.  USCIS has a non-discretionary duty to

19    adjudicate each of Plaintiffs' petitions within a

20    reasonable amount of time and USCIS has failed to

21    perform that duty.

22         Further, Plaintiffs -- all right.

23    Continuing, suffering ongoing harm.

24         So we have pled to declaratory -- sorry.

25    We believe -- while we believe that sufficient

Electronically signed by Kelli Ann Willis (101-201-060-0438)          f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 31

1    relief is available to us under our first claim

2    under the APA, the Administrative Procedure Act.  As

3    a fallback position, we have also pleaded for

4    mandamus relief as well.  And it is akin to state

5    law, right?

6              So under Texas law, for example, if I file

7    a breach of contract suit, I always plead in the

8    alternative.  I say breach of contract, and I say in

9    the alternative, if some technical legal failure

10   comes in, and I can't get my breach of contract

11   claim, which is a legal claim, then I also plead for

12   quantum meruit, which is an equitable claim, or

13   promissory estoppel, which is also an equitable

14   claim, et cetera, et cetera, et cetera.

15             Again, as we said in our objection, we

16   believe that our remedy does come from the APA, from

17   5 U.S.C. 706.

18             But, in the alternative, we should be

19   allowed to -- we have pled a Mandamus Act claim as

20   well, because if for some technical reason, the

21   legal claim under the APA fails, then we have got an

22   equitable claim for mandamus.

23             And, again, that is under federal civil

24   law as stated right there.  So all of our claims --

25   And then we have got other various miscellaneous

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Page 32

 1   claims like declaratory relief under 28 U.S.C. 2201

 2   and 02, and for attorneys fees under the Equal

 3   Justice Act.

 4        So all of these are civil claims under

 5   federal statutory law.  If the Court will turn back

 6   to the very first page in our Amended Complaint,

 7   under paragraph 1, Jurisdiction and Venue, we cover

 8   this.  We say, look, our claims arise under the APA,

 9   in paragraph 1, APA at 5 U.S.C. 701, et cetera, and

10   the Mandamus Act located at 28 U.S.C. 1361.

11        Paragraph 2.  Further, Plaintiffs are

12   seeking declaratory relief 28 U.S.C. 2201 and 02;

13   injunctive relief under 5 U.S.C 701, and Mandamus

14   relief as described under 28 U.S.C. 1361.

15        All of these are federal civil claims that

16   arise under statutory federal law.

17        So, accordingly -- and I'm in Paragraph

18   3 -- this Court has jurisdiction pursuant to 28

19   U.S.C. 1331, because all of these claims are civil

20   claims.  This is a civil action arising under the

21   laws of the United States.

22        Thus, this Court has jurisdiction under

23   1331, and also under 28 U.S.C. 1361, because this is

24   an action in the nature of a mandamus to compel an

25   officer or employee of the United States or any

Electronically signed by Kelli Ann Willis (101-201-060-0438)    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 33

1    agency thereof to perform a duty.

2            And the duty we are saying is, Hey, USCIS

3    has a statutory, non-discretionary duty, which is

4    reinforced both by statute and case law, you know,

5    case after case after case.  It is statutory.  It is

6    non-discretionary.  And it is a duty to adjudicate

7    these petitions within a reasonable amount of time.

8    That is their deadline.

9            Opposing counsel kept saying, there is no

10   deadline, but there is.  It is a reasonable amount

11   of time.

12           THE COURT:  So can I ask you, can I ask

13   you a question?  About how the reasonable deadline

14   plays into harm and ripeness of the injury?

15           Let's take a hypo and say -- and this is

16   purely fictitious, right?  Because no one gets a

17   H-B1 visa for 20 years.  But let's assume that one

18   of your clients got an H-B1 for 20 years.

19           Would you have a ripe claim after 120

20   days, when they know they won't have an entry for

21   another 20 years?  I'm trying to figure out the

22   ripeness with respect to not just your case, but

23   each of your three clients, right?  And Chuttani is

24   certainly the closest to having a concrete injury.

25           It seems like Siddamreddy is the hardest,

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 34

1    but how do we factor in -- I recognize that there is

2    a deadline of reasonableness in the statute.  I'm

3    trying to square that with the notion of standing,

4    and under the APA, does it presume -- is there a

5    like a per se standing, a per se harm under the APA

6    any time you have action that is unreasonably

7    delayed or unlawfully withheld?

8              MR. GITLIN:  Absolutely.

9              THE COURT:  Are you presuming the APA such

10   that you don't need to have a ripened injury?

11             MR. GITLIN:  Absolutely.

12             Your Honor, the ripened injury is the

13   unreasonable delay.  The case law, the case law

14   across the country, including multiple cases in this

15   District, in the Northern District of Texas, both

16   Judge Godbey and Judge Boyle have addressed this

17   issue.

18             And I will be getting to those cases and

19   citing them.  In fact, both I and opposing counsel

20   cited those particular cases.

21             So each -- each of the Plaintiffs has a

22   private statutory right of action such that -- and

23   that is under 702 and 706, such that the moment the

24   Government, such as the moment that the USCIS fails

25   to reasonably -- sorry -- to adjudicate their

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 35

1   petition within a reasonable amount of time, they

2   have an injury, and a private right of action under

3   706 to bring that right of action, to bring a claim,

4   and that they are harmed the moment that USCIS does

5   not adjudicate their petition within a reasonable

6   amount of time.

7          So the answer to your question is yes.

8   The claims are ripe the moment USCIS does not

9   adjudicate their claim -- their petition within a

10  reasonable amount of time.

11         THE COURT:  Understood.

12         MR. GITLIN:  And so, your Honor, I think,

13  and I think that segues nicely into the next part of

14  12b6 visa.

15         I think we have shown that statutorily

16  this Court has jurisdiction.  In fact, as I

17  mentioned, multiple courts -- several in this

18  district and another recent one, I believe, within

19  the last year, in the Western District of Texas,

20  found the same.

21         Let me give you the site.  It was cited in

22  our -- hold on.  It was cited in our objection, if I

23  can jump just a little bit.  Here we go.

24         Judge Boyle in Elmalky v. Upchurch.  And

25  this is -- I can give you both the case number and

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 36

1    the WestLaw cite.  The case number is

2    3:06-cv-2359-B.

3              That is the case number.  I was able to

4    look it up on Pacer with that.  But here is the

5    WestLaw cite.  It is going to be 2007 WL 944330.

6    And that is the Northern District of Texas,

7    March 28th, 2007.

8              And let me give you the other one, Judge

9    Godbey's case.  It is Ahmadi v. Chertoff, and this

10   one does have a cite.  It is 522 F.Supp. 2d 816,

11   NDTX 2007.  I cited Ahmadi v. Chertoff in my

12   objection, and defense counsel cited Elmalky v.

13   Upchurch in their -- I can't remember if it was in

14   their original motion or in their reply, but in one

15   of them.

16             This case mirrors both of those cases,

17   like, just very, very closely.  They weren't EB-5

18   petitions, but they were both -- let me see -- in

19   Ahmadi, it was an I-485 application, and in Elmalky,

20   it was an I-765 application, I believe.  Sorry.  It

21   was also an I-485 application.

22             And in both cases, USCIS, the Government

23   came back and filed pretty much the exact same

24   thing, 12b1, 12b6.  And in both cases, in Judge

25   Godbey's case and in Judge Boyle's case, they both

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 37

1    said, no, we have got jurisdiction because there is

2    a private right -- I'm sorry -- USCIS is a statutory

3    non-discretionary duty to adjudicate within a

4    reasonable amount of time.  And the APA gives a

5    private right to compel adjudication when it -- when

6    it has been an unreasonable amount of time.  And on

7    top of that, this Court has jurisdiction under 1331,

8    because those are civil claims arising under federal

9    law.

10            So they -- they easily found that the

11   courts had jurisdiction, and then the same thing

12   with the Western District case from 2019 that we

13   cited, M.J.L. versus McAleenan, and I can give

14   you -- again, that one is unpublished because it is

15   kind of recent.  I can give you the case number.  It

16   is A-19-cv-00477-LY.

17            Let me find where I was.

18            So I think it bears talking about M.J.L.

19   just briefly, the Western District case from

20   November 13th, 2019.

21            In that case, the Plaintiffs had each

22   submitted an immigration petition to USCIS, which

23   USCIS had sat on and not adjudicated.

24            When the Plaintiffs filed suit in that

25   case, they alleged that USCIS had not adjudicated

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Page 38

1    their petitions within a reasonable amount of time,

2    and brought the same claims we have here, a request

3    to compel an adjudication under the APA, and in the

4    alternative, a request for mandamus.

5             Just like in this case, USCIS filed a

6    Motion to Dismiss, based on both 12b1 and 12b6, and

7    the Court finding it had jurisdiction stated

8    explicitly, "The APA provides that a person

9    suffering legal wrong because of Agency action or

10   inaction, which is under the statute, or adversely

11   affected thereby by Agency action with the meaning

12   of the statute is entitled, there is a personal

13   right to judicial review thereof."

14            So, in answer to your question, that is

15   the personal right, and that is where the ripeness

16   comes in.  And that the APA requires agencies to

17   conclude matters within a reasonable time, and

18   authorizes the federal court to compel agency action

19   unlawfully withheld or unreasonably delayed.

20            So I will skip.  And the cases go -- it

21   hits all of the points.  It is exactly what we are

22   finding today, and the Court easily -- easily found

23   jurisdiction.

24            So the same thing with Ahmadi v. Chertoff

25   and Elmalky v. Upchurch, both, again, from this

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 39

1    district, from district courts in this district.

2              So at this point, I think I will move

3    ahead to 12b6, the failure to state a claim.

4              So, as I have mentioned multiple times,

5    under 5 U.S.C. Section 555(b) defendants have a

6    non-discretionary statutory duty to adjudicate each

7    of my clients' claims within a reasonable amount of

8    time.

9              We have also covered the basis of our

10   claims.  It is our allegation that defendants

11   haven't, that they have breached their duty by not

12   adjudicating this in time.

13             That obviously means that the key question

14   for the 12b6 is, you know, have -- have

15   defendants -- have we pled sufficient facts to state

16   a claim that the Defendants have unreasonably

17   delayed the processing of our -- my clients'

18   petitions?

19             So, as the case law establishes, this is a

20   question of fact.  And it depends on, to a great

21   extent, on the facts of the particular case.  That

22   is covered in a number of cases that I cited and

23   included, the Almaki v. Upchurch case and the

24   others.

25             I won't go into all of the cites unless

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 40

1    the Courts wants, but I'm happy to provide them.

2    But I think at this point it bears looking at our

3    petition, because this is the crux of their

4    complaint -- their objection -- I'm sorry -- their

5    motion.

6              It bears looking at our complaint to see

7    what we have pleaded.  If the Court would look at,

8    in our Amended Complaint, page 3.  We will start on

9    page 3, paragraph 18.

10             As we show in paragraph 18, it says,

11   "Pursuant to 8 U.S.C. 1572(b), the processing of an

12   immigrant benefit application should be completed

13   not later than 180 days after the filing of the

14   application."

15             That is the sense of Congress.

16             Now, this is something that you and

17   opposing counsel discussed a little bit about the

18   bindingness of the Fifth Circuit case.  And, your

19   Honor, I think it is moot whether the Fifth Circuit

20   case is binding or not.  Here is what I will say.

21             The case law does seem to establish that

22   this is not a hard and fast deadline, but that is

23   not what we are pleading.  We are not saying that it

24   has got to be done within 180 days, but

25   simultaneously, you don't throw this out of the

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 41

1    window.  It matters.  The case law establishes this

2    is one of the factors that you look at, you look at

3    what Congress says how long it should take.  And

4    Congress says here in 1571, it is the sense of

5    Congress that it should be six months, 180 days.

6              So, again, that matters.  That goes into

7    the determination of what is reasonable.

8              All right.  Let's turn to page 4,

9    paragraphs 19 and 20.  Pursuant to -- and we have

10   pled that the fact that pursuant to 8 U.S.C.

11   1573(a), the law requires that the Attorney General

12   shall -- it is mandatory -- take such measures to

13   reduce the backlog of EB-5 petitions with the

14   objective of total elimination.

15             And with respect to an EB-5 petition, a

16   backlog means any period of time in excess of 180

17   days.

18             So here we have a separate statutory

19   provision that is saying, Hey, look, it has been

20   over 180 days, that is no bueno, that is no good,

21   right?

22             But, again, we are not saying that this is

23   a hard and fast, it has got to be 180 days, but,

24   again, simultaneously, you don't throw these facts

25   out the window, I mean, not you, but you in the

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 42

1    broad sense.  Sorry.

2           Pardon me if it sounds like I'm lecturing

3    the Court.  I absolutely did not have that

4    intention.  I apologize.

5           THE COURT:  I didn't take that way.

6           MR. GITLIN:  Okay.  Thank you, your Honor.

7           But, again, we have got multiple statutory

8    provisions that show what the timeline, what

9    Congress thinks the timeline should be.

10          All right.  Let's move ahead to paragraph

11   24.

12          As of the filing of our Complaint, USCIS

13   currently states that its standard average

14   processing time for an EB-5 petition is 12.3 months.

15          And, again, you heard Plaintiff -- you

16   heard defense counsel represent, well, our current

17   time is this and our current time is that.  No.

18   This Court, for the first of 12b6, this Court cannot

19   consider that.

20          The Fifth Circuit is clear, the Court has

21   to consider only the facts in my petition.

22          Now, as I state, and as I cite on Footnote

23   8, the numbers that I have got are straight from

24   USCIS.  They are the stats that USCIS is publishing.

25          Now, defense counsel wants to come in and

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654

Page 43

1    say, well, look, we have got these other numbers

2    here that are really the real numbers, not those

3    ones we are publishing on our website.  Well, if

4    they want to try to do that at trial, that is their

5    prerogative.  But for the purposes of 12b6, the

6    Court has to consider only the numbers I'm putting

7    forth.

8              And, again, I will give you the citations,

9    the Court can go look -- and I will tell the Court,

10   I went and checked the numbers.  And the average

11   processing time has gone up between -- when we filed

12   the case, at the time we filed the case, it was 12.3

13   months.  It is now 14.1.  They have added another

14   two months on the average processing time.

15             So let's think about that.

16             If the average processing time -- fine,

17   let's take their 14.1 months.  If their average

18   processing time is 14.1 months for an EB-5

19   petitions, my clients are still -- the shortest

20   amount of time the client, I think, it is -- you

21   mentioned Mr. Sidamreddy.  I will tell you.  No,

22   Mr. Uppalapati.  That is still one year -- sorry.

23   That is still almost one and a half times what the

24   average processing time is.

25             Again, is it dispositive?  No.  But -- but

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 44

1    it is humongously -- it is a big fact.

2              Hold on.

3              The length of -- here, I'm sorry.  I have

4    got it right here.

5              So let's go over the three Plaintiffs,

6    just briefly.  Let's take Chuttani.  As of this

7    hearing, it has been almost two years and two months

8    since USCIS acknowledged receipt of Mr. Chuttani's

9    petition, which means that is two times the average

10   processing time reported by USCIS for EB-5

11   petitions, and well over four times the 180-day

12   timeline set out by Congress.

13             That sounds unreasonable to me.

14             Okay.  Mr. Siddamreddy, it has been almost

15   two years.  It has been one year and 11 months since

16   USCIS acknowledged receipt of his petition, which is

17   just about two times the average -- the published

18   average processing time reported by USCIS, and

19   almost four times -- 3.12 times the 180-day timeline

20   set up by Congress.

21             The same thing with Mr. Uppalapati.  It

22   has been over a year and a half, which is coming up

23   1.5 times the published average processing time and

24   over three and a quarter times the 180-day timeline

25   set up by Congress.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 45

1          So those are the facts that we have pled.

2          Moving on page 4, paragraph 25.  This is

3    where I cover that USCIS has dropped drastically

4    their -- their -- the number of petitions it

5    processes ever year.  I won't go into every single

6    thing, but per their own reported data, USCIS --

7    back in 2018, USCIS was adjudicating 15,000 plus

8    petitions a year.

9          By the end of the year, in 2018, USCIS --

10   in fact, because of that, by the end of the year,

11   they only had 14,000 and change of petitions

12   pending.

13         In 2019, that number dropped by over

14   10,000 petitions a year.  It just plummeted.  That

15   is a drop of approximately 7 percent.

16         Put it another way in 2019, USCIS

17   processed less than one third of the number that it

18   had been processing in years prior.

19         So, again, this is all by USCIS' numbers,

20   and there is no explanation as to why, or if they

21   have given no rule of reason, or anything.  It is a

22   massive drop in oncoming petitions.

23         And so -- I'm sorry -- I'm sorry -- this

24   drop in processing is also despite a massive drop in

25   incoming petitions.  And I'm on paragraph 27 here.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                        f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 46

1   And the Court does not have to dig through this

2   here, I will summarize.

3           Back in 2015 and 2016, USCIS was receiving

4   approximately 14,000 petitions per year.  In 2018

5   and 2019, however, that number dropped to only 6,000

6   and change and 4,000 and change, respectively.

7           They are getting a fraction coming in.  So

8   they can't claim that somehow, well, we are

9   processing far fewer now, 10,000 less a year now,

10  less than one third than what we used to because we

11  are overwhelmed with incoming petitions.

12          No, the numbers are going down

13  drastically.  So that is a drop of over 70 percent

14  in incoming petitions in the span of approximately

15  three years.

16          All right.  Given -- and instead of

17  speeding up adjudication, or getting rid of the

18  backlog, which Congress has said, look, you need to

19  get rid of the backlog; they just said, no, we are

20  going to put the brakes on and they have given no

21  reason why.

22          So -- and, look, the math is

23  straightforward.  If USCIS was current -- and as

24  opposing counsel said, they have only got about a

25  6,000 backlog right now.  So the math is straight

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

1    forward.  If USCIS is currently processing petitions

2    at the rate it was in 2018, they would be done.

3    Would there be any left?  No.  Probably not, it

4    would be virtually eliminated.

5            So why aren't they?  And they have given

6    no explanation.  None.

7            That seems unreasonable.

8            All right.  Page 5, paragraph 29, all

9    right.  So let's talk about the new prioritization

10   process.  And I appreciate opposing counsel bringing

11   this up.  And she said, we qualify, we are -- for

12   each of the Plaintiffs, they are current and qualify

13   for a visa, their prioritization date is here.  So

14   they qualify.

15           So under USCIS's new prioritization, they

16   ought to be moved to the front of the line.  So they

17   complain, well, maybe, it would be skipping them to

18   the front of the line, but they have set up the

19   process to skip them to the front of the line and

20   here we are.

21           So, and page 69, and the Court doesn't

22   need to look at this, we listed each of unique

23   prejudices including one of my clients, who has

24   children who are United States citizens, who may not

25   get here to stay here in the country with his kids.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 48

1           So, as we covered, USCIS has not issued a

2     decision nor an RFE, request for evidence, on any pf

3     them.

4           So, as the Court can see, we pleaded

5     extensive facts that USCIS' delay in processing

6     petitions is unreasonable.  And per the Fifth

7     Circuit, for the purposes of the 12b6, the Court has

8     to accept all of our facts as true, viewing them in

9     the light most favorable to us.

10          So considering that we have pleaded that

11    each of the Plaintiffs has filed a petition, you

12    know, between a year and a half to almost two and a

13    quarter years ago, the number shows a dramatic drop

14    in petitions with no explanation of the petitions

15    adjudicated by USCIS, with no explanation as to why,

16    despite the number of incoming petitions dropping as

17    well, that each of my clients qualifies for

18    prioritization, that USCIS has not adjudicated any

19    of our petitions, and the length of time that they

20    have taken has blown way past Congress' statutory

21    timeline and USCIS's own published average

22    processing times, sometimes up to two times their

23    published average processing times.

24          Look, per the Supreme Court, all we have

25    to do to clear the bar for 12b6 is plead factual

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 49

1    content.  That allows the Court to draw the

2    reasonable inference that USCIS has not processed

3    our petitions, or has unreasonably delayed our

4    petitions, processing our petitions.

5            Given all of the facts -- it is a very low

6    bar.  Given all of the facts that we have pleaded,

7    we have certain pleaded sufficient facts to merely

8    "draw the reasonable inference" that USCIS has

9    unreasonably delayed its processing.

10           Now, here is the thing, I think the vast

11   majority of Defendant's motion and argument seems to

12   be that, look, it hasn't been unreasonable upon

13   trial of this case and they win.  That is their

14   argument.  Their argument is basically a final

15   argument, a closing argument on trial.

16           But that is not where we are at.  We are

17   at the 12b6 stage.  All we have to do is plead facts

18   for a reasonable inference, and we have certainly

19   met that bar.

20           And, otherwise -- and then here is the

21   thing, given all that we have pleaded, if the Court

22   were to find otherwise, then the Court would be

23   creating case law that established that USCIS has,

24   as a matter of law, not unreasonably delayed the

25   processing of our petitions, despite all of the

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 50

 1    facts that we covered.

 2            And were this Court to do, it would be in

 3    contradiction to numerous other courts across the

 4    country, which I have cited in our objection,

 5    including multiple district courts in this district

 6    which have found that we have cleared the bar.

 7            And, again, I go back to Judge Godbey in

 8    Ahmadi v. Chertoff, and Judge Boyle in Elmalky v.

 9    Upchurch.  They were faced with pretty much the

10    exact same set of claims, and the exact same motion

11    to dismiss.  And they found, number one, the Court

12    had jurisdiction; and, number two, the claims

13    pleaded met past the low 12b6 bar.

14            But even if all of the foregoing weren't

15    persuasive, an examination of the law applied to

16    this shows that we do meet it.  Because, for the

17    purpose of the APA, it is complicated, and the

18    determination of whether an agency has reasonably

19    delayed action is a complicated and nuanced task

20    that requires a fact intensive inquiry.

21            And just the mere hand waiving of

22    allegations by USCIS, that, look, it is within the

23    standard processing times.  That doesn't cut it.

24    That doesn't get us booted on 12b6.

25            Now, maybe they win at trial, but it

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 51

1    doesn't get us booted on 12b6.

2              And the courts across the country use

3    something called a track test, with six factors.

4    And we have met each of the six factors.  We have

5    pleaded sufficient facts to meet each of the six

6    factors.  And if we have done that, then that is a

7    fact question.  And that gets us above 12b6.

8              So, for example, the time agencies take to

9    make decisions must be governed by a rule of reason.

10   As we have covered, they haven't provided -- USCIS

11   has not provided any rule of reason.

12             Well, that factor cuts against them.

13             Number two, where Congress has moved a

14   timetable or other indication of speed or expects

15   the Agency to proceed.

16             Well, Congress has provided a timetable or

17   an indication of what it thinks the speed should be,

18   180 days.  Well, they have blown four times past

19   that.  In fact, USCIS has provided a length of time

20   that it says is average; 12.3 months, or if we want

21   to round it up to today, 14.1 months.  But they have

22   blown way past that, too, in some cases, 1.5 to two

23   times.

24             All right.  I won't belabor the point.

25   USCIS -- and, therefore, whether there are higher

Electronically signed by Kelli Ann Willis (101-201-060-0438)                                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 52

1    priorities.  USCIS hasn't listed any higher

2    priorities or provided evidence of it.

3              Number five, the Court should also take

4    the time -- here, let me jump ahead to number six.

5              The Court may not find any impropriety

6    lurking behind the Agency's lassitude.

7              But here is the thing, while we don't have

8    any explicit evidence of impropriety right now, the

9    scuttling of the numbers that I went over, how they

10   dropped it to us, a third of what it used be,

11   despite the drop of incoming, that stinks.

12             Without making any sort of political

13   statement, and I'm not getting involved here in

14   that, but it is no secret that the current

15   administration has been explicit about its disfavor

16   with respect to even legal immigration.

17             And, in fact, since the filing of this

18   case, I have had other cases -- I had a case up in

19   DC, the District Court in the District of Columbia,

20   and with respect to an H-1B immigration.  And it was

21   the same sort of thing, it was an APA claim, the

22   exact same claim.  And we found there was -- we got

23   up there, we got ahold -- there was a -- a quote,

24   unquote guidance memoranda that had been issued to

25   the USCIS inside.  And we litigated it, and it was

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 53

1    found by -- it was a sister case, where we were

2    litigating ours at the same time, so it kind of

3    adjudicated, a sister case, and I can give the Court

4    the cite.  IP Serve Alliance v. United States

5    Citizenship and Immigration Services, Case No.

6    18-cv-02350.  And this is up in the District Court

7    in the District of Columbia.

8              USCIS was found to be propagating illegal

9    memoranda, like breaking the law against -- it

10   was -- it was -- it was guidance policies that were

11   designed to scuttle legal immigration.

12             There is a whiff of impropriety throughout

13   USCIS right now.  And they already have been found

14   to have been breaking the law on legal immigration.

15   So, again, this is the sort of thing that factors

16   in.  It is not that far of a stretch, but if they

17   are doing it with H-1B visas, they are doing it with

18   EB-5 visas.

19             So, given all of the foregoing, we have

20   met all of the track factors.  So, again, we don't

21   have to win the case here, all we have got to do is

22   get over the hump of 12b6.  And if we have pled

23   enough facts to meet each of the factors, we get

24   over the hump.

25             And, finally, I think, even if all of that

Electronically signed by Kelli Ann Willis (101-201-060-0438)                           f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 54

1    weren't enough, the Court should deny the

2    Defendant's motion to allow us to conduct discovery,

3    as courts across the country do.

4           When we have got this sort of situation,

5    what the Courts say is trying to adjudicate the

6    track factors, which, again, is a nuanced and

7    fact-intensive determination, at the 12b6 stage is

8    improper.

9           So what courts have been doing, including

10   the M.J.L. court in the Western District of Texas is

11   saying, look, this is premature, the dismissal of

12   this case is premature.  Let's let the plaintiff

13   engage in some discovery to see if they can get the

14   remaining track factors, which we will need.  I

15   mean, USCIS is the one holding the information on

16   this.  So that is what we will need to do.

17          And they have said, they have denied the

18   12b6 motions for that.  And if this Court would be

19   doing differently, it would going against courts

20   across country, including districts in Texas, and

21   in, I believe, in this district -- I don't know if

22   they added track factors in this.  Courts across the

23   country are saying, huh-huh, this is premature at

24   the 12b6 stage, plaintiffs get to engage in

25   discovery.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 55

1            If the Defendants want to come back at an

2    MSJ, at a later stage, that is fine.  But this case,

3    this case stays alive.

4            All right.  Let's see.  Let me cut that

5    out.  I'm almost done.

6            Oh.  As for mandamus, again, we have

7    covered this briefly, and I won't belabor the point,

8    but our mandamus claim is like a contract case where

9    we keep -- where we have as an alternative, a

10   promissory estoppel, or a quantum meruit claim.

11           We believe other remedies exists under the

12   APA.  However, should the requirements of our APA

13   claim fails for some technical reason, thus denying

14   us relief under the law, then we should have an

15   equitable claim to give us the relief we are looking

16   for.

17           And surviving a 12b6 case -- sorry -- a

18   mandamus claim survives the 12b6 under these

19   circumstances by a case in this district.

20           Again, I'm going to refer the Court back

21   to Judge Boyle's Elmalky case, where, again, the

22   same thing, they pled for APA and they pled for

23   mandamus, and the Government brought a 12b6, and on

24   their mandamus claim arguing the same thing.  And

25   Judge Boyle said no, it stays alive.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 56

1        At this time, right?  It is not like the
2   Court can't dismiss it later, if the Court doesn't
3   think.  But at this time, it survives 12b6.
4        So I would like to close, your Honor, with
5   this, just as a practical matter.  That goes to
6   something that you asked about earlier.  You said,
7   you know, what happens?
8        And I will tell you that in my experience,
9   I have filed a number of these cases, both EB-5,
10   H-1B, I have filed multiple types of petitions.  And
11   I will tell you what pretty much always happens.
12        I file a case.  The Government comes back
13   and files some sort of non-answer pleading, a
14   motion, a 12b6, a 12b1, you know, something that
15   delays their time to answer.
16        And then once we get over that hump, you
17   know, the Government typically comes to me
18   afterward, their attorney calls me up and says, Hey,
19   look, you know, coincidentally, magically, all of a
20   sudden, the thing that you are complaining about, I
21   think we can get this solved really quickly, and
22   says, we need 30 days, we need 60 days, whatever it
23   is.  We work out a deal, and we abate the case.
24        And then magically, everything that we are
25   complaining of gets taken care of, the case gets

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 57

1    adjudicated, or if it is a denial, it gets reversed,

2    or whatever it was.  And then we abate the case, and

3    then, you know, 30, 60 days later we file a

4    mootness, and the entire case gets dismissed.

5             I have never taken one of these to trial.

6    Ever.  And it has always been pretty much the exact

7    same thing.  And everybody I have talked to has said

8    the same thing.  That, you know, there is dilatory

9    motion at first.  Once you get past that, once you

10   get over it, the case gets adjudicated -- you know,

11   magically, the thing that the Plaintiffs are

12   complaining about, the Government comes up, and

13   says, well, it looks like your place in line all of

14   a sudden just magically came up for all of your

15   Plaintiffs.  It gets solved; the case goes away.

16            So this is not unusual.  And I have never

17   had a case dismissed on these grounds, and I have

18   never had -- I have never had it for jurisdiction, I

19   have never had is dismissed for 12b6, and the case

20   law backs it up in courts across the country,

21   including in this district.

22            So if the Court has any questions, I would

23   love to answer them.

24            THE COURT:  I think you have covered them

25   all, Mr. Gitlin.  So I will turn it over to Ms.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 58

1    Delaney again for the final word.

2              MS. DELANEY:  Thank you, your Honor.  I

3    would just like to make a few brief points.

4              Listening to the Plaintiffs' counsel

5    describe the case, he pointed out a lot of

6    information about the general statistics for

7    adjudication of Form I-526 petitions, about cases in

8    this district and in the Western District, where

9    much longer delays of periods of time.  Ahmadi was a

10   four-year delay, Almaki, a three-year delay, and

11   M.J.L. v. McAleenan was nearly a three-year delay

12   plus a regulation issue.

13             Plaintiffs' counsel has also pointed to --

14   I would argue, spurious allegations that are not

15   correct about the D.C. cases.

16             At the end of the day, Plaintiffs have not

17   demonstrated the specific harm that is going to

18   affect them, if the normal adjudicative process for

19   Form I-526 petitions continues, within the United

20   States lawfully, until at least the middle of 2021.

21             One of the petitions is expected to be

22   assigned to an officer for adjudication within the

23   next 30 days.  The timeline is moving forward.

24             The Court can also take judicial notice of

25   the public records for USCIS.  And that is where all

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 59

1    of the information I described, your Honor, comes

2    from.  It is not secret sources.  It is all

3    information publicly available and posted on USCIS

4    at its website.

5          It also addresses the Rule of

6    Completeness, addressing information in the

7    Plaintiffs' Amended Complaint, to point out some of

8    the additional and more accurate specifics that the

9    Court should consider as part of the whole picture

10   when evaluating Defendant's Motion to Dismiss.

11         Crucially, I would like to point one of

12   issues that the Plaintiffs' counsel kept addressing

13   was the historical average number, the historical

14   average period of time for processing petitions.

15         It is correct that as of right now, for

16   the first three quarters of this fiscal year, it is

17   14.1 months.  But it is important to look at the

18   historical average for fiscal year 2018, which was

19   22.2 months.  And the historical average for fiscal

20   year 2019, which was 19.8 months.  And all of the

21   Plaintiffs' petitions are within that ballpark right

22   now.

23         But also the historical average processing

24   time is calculated using a very different

25   methodology that doesn't use the actual data from

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 60

1    the actual completions of petitions right now.  And

2    that information is an estimated processing time

3    range, which is on the USCIS website.  It is

4    addressed in both our Motion to Dismiss and in our

5    Reply.  And right now it is 30 to 49.5 months period

6    of time.

7          So, critically, it is also important,

8    USCIS is focused on creating a fair system where the

9    same rules apply to all petitioners across the

10   board.  There are, again, some considerations for

11   visa availability, some considerations for whether

12   the underlying project itself, from which the

13   investor is investing, has been approved already by

14   the Agency.

15         But the critical factor is that these same

16   requirements are applied to all petitioners across

17   the board.  Plaintiffs here have not shown how they

18   would be harmed by the current system or why they

19   deserve extraordinary relief as opposed to others

20   similarly situated.  They have failed to plead a

21   claim under the APA and they have failed to show

22   jurisdiction under either the APA or for Mandamus

23   relief.

24         As a result, your Honor, we believe it is

25   appropriate to dismiss the case at this point.

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 61

1           THE COURT:  All righty.

2           Well, thank you for the argument.  I

3    appreciate counsel for both sides being very well

4    prepared and helping me work through the Motion to

5    Dismiss, so I have got my work cut out of me.

6           I will start working through the motion in

7    written form, and then y'all will see that order and

8    we will proceed based on what that ruling is.

9           MS. DELANEY:  Thank you, your Honor.

10          MR. GITLIN:  Thank you, your Honor.

11          THE COURT:  Thank you.  Court is

12   adjourned.  Y'all have a good day.

13          MR. GITLIN:  Thank you.

14          (Proceedings concluded at 11:46 a.m.)

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by Kelli Ann Willis (101-201-060-0438)                    f59f91d1-d568-4792-b8b6-ba2f2ab07f5f

Page 62

1                     C E R T I F I C A T E

2

3              I, Kelli Ann Willis, CSR/CRR, certify

4    that the foregoing is a transcript from the record

5    of the proceedings in the foregoing entitled matter.

6              I further certify that the transcript fees

7    format comply with those prescribed by the Court and

8    the Judicial Conference of the United States.

9              This 9th day of November 2020.

10

11

12                         s/ Kelli Ann Willis
                           Kelli Ann Willis, CSR No. 10195
13                         Official Court Reporter
                           The Northern District of Texas
14                         Dallas Division

15

16   My CSR license expires:  December 31, 2020

17   Business address:  1100 Commerce Street
                        Dallas, TX  75242
18
     Telephone Number:  214.753.2654
19

20

21

22

23

24

25

KELLI ANN WILLIS, RPR, CRR, CSR
FEDERAL COURT REPORTER - 214-753-2654